## TURNER-WILLIS MOTOR CO v CALES

Ohio Appeals, 4th Dist, Lawrence Co

Decided Nov 16, 1931

A. R. Johnson, Ironton, for plaintiff in error.

A. J. Layne, Ironton, for defendant in error.

MAUCK, PJ.

The principal issues at the trial were whether the operator of the defendant's car was at the time of the collision acting within the scope of his employment, and if so whether he was negligent in the operation of the car. It is strongly urged that while admitting that the operator of the car was an employe of the defendant company such employe was not acting for the company at the moment of the collision, and that a directed verdict should have been entered for the defendant on that ground. The record shows that the owner of the automobile drove it to the repair shop of the defendant and that an employe of the defendant took charge of it, and to ascertain what was wrong with the car drove it thru and out of the city of Ironton. This operator testifies that when he had reached a point on what is known as Tunnel Hill he ascertained what was wrong with the machine; that as he was then going in the direction of the place where he wanted to take his noon-day lunch he proceeded on his own account and for his own convenience to run the machine to his luncheon place, and that the collision occurred after the moment when he had been trying out the machine and when he had started upon his personal business. It was accordingly undisputed that this employe was acting within the scope of his employment when he started on the trip that resulted in the disaster. He did not stop his car at the moment when he says he was no longer acting as agent. He did not at that time examine the car but proceeded in an uninterrupted journey to the point of collision. Whether by a mental operation of the driver of the car he had ceased to function as an employe and had started on a private adventure was a question for the jury. The trial court was quite right in denying the directed verdict.

The second assignment of error is that the collision was not due to the excessive speed at which the defendant's car was being operated but to a latent defect in the car of which the defendant was not apprised. The record shows that the defendant's car was being driven at a speed of thirty to forty miles on a curved road and that the machine was admittedly out of order and in need of repair. Whether that rate of speed at that time and place and

with that sort of car was negligence, was clearly a question for the jury.

There are other questions arising in the course of the trial now urged as ground for reversal but with the exception of the one presently to be noticed none of them is of consequence.

Upon the issue of the defendant's negligence there was a reasonable ground for difference of opinion. A verdict for either party upon that issue, if fairly tried, would not be disturbed. It is consequently important that that issue be determined by the jury solely upon the merits of the case.

This was a case in which it appears likely that the defendant was protected by liability insurance. The courts have had much difficulty in laying down some rule by which the plaintiff might be prevented from showing to the jury that the defendant was so protected and at the same time deprive the plaintiff of no real right that he might have. In Wilson v. Wesler, 27 Oh Ap 386, and elsewhere in this state, it has been held that not only is testimony tending to show that the defendant is insured incompetent but that it is so vicious as to require reversal unless it appears that it could not have influenced the verdict of the jury. The reason underlying this rule is clear enough and a full discussion of it is found in the annotation to Jessup v. Davis, 56 A. L. R. 1418. In Pavilonis v. Valentine, 120 Oh St 154, it was determined by the Supreme Court that jurors might be examined with reference to their interest in an insurance company and the rule in the second paragraph of the syllabus in Schmidt v. Schalm, 2 Oh Ap 268, was thereby overruled. The Pavilonis case did not, however, affect the rule in Wilson v. Wesler regarding the prejudicial nature of testimony of this character. With this rule in mind, therefore, we must examine the record in this case.

The last witness placed upon the stand was Wendell Willis, called by the defendant. He testified to absolutely nothing in chief. The plaintiff thereupon took him for cross examination and developed that he was secretary and general manager of the company at the time this collision occurred. It developed that Mr. Willis wrote a letter to Mr. Cales, the father of the plaintiff, on February 19, 1931, with reference to "an old account". The plaintiff in error claims that this letter was in the nature of a compromise and that it was therefore wholly incompetent to bring out any admissions made therein. This, however, does not appear from the record because the letter as a whole is not before us. The letter was handed to the witness by counsel for the plaintiff and he identified it as his. The record continues:

"Q What do you mean by this statement in this letter?
Objection. Overruled. Exceptions.
Q 'If we are to blame for the wreck, of course the insurance company will pay this for your'. What do you mean by this statement?
Objection. Overruled. Exceptions.
A I mean just what I said, if we are. That's all.
By Mr. Pratt. I move that answer be stricken out and the jury instructed not to consider it.
Motion overruled. Exceptions noted."

It is difficult to see how there might arise a clearer case of the violation of the rule against showing that a casualty company might be required to pay any verdict reached by the jury. But one excuse is offered for it, and that is that it had already been brought out that the defendant was insured. This excuse is wholly insufficient. The only other reference in the case that could have given the jury a hint of the existence of an insurance policy is found on page 25. The operator of the defendant's automobile was then on the stand and was testifying that he had taken from the machine a bolt that was in evidence and was claimed by the defendant to have been the sole cause of the collision. On cross examination, this witness was asked who told him to take the bolt off the car. He answered "Mr. Patterson." "And who is Mr. Patterson?" inquired the plaintiff's counsel, and he answered "The insurance adjuster." This testimony seems to have been naturally evolved from the situation and did give the jury a hint of the interest in the case by an insurance company. It was calculated to prejudice the defendant but that was an unavoidable prejudice. The fact came out so casually that it is unlikely that it could have resulted in any serious harm. It is strange argument that inasmuch as the plaintiff in examining Mr. Lutz unavoidably brought out the hint of an insurance company's interest in the case that it thereby paved the way for proving directly from the manager of the corporation that the insurance company would pay the damages in case the defendant was found to be to blame for the collision.

Because of the cross examination of Mr. Willis as above quoted, and for no other reason, the judgment in this case is reversed and the case remanded for a new trial.

MIDDLETON and BLOSSER, JJ, concur.